```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
PAUL REMBERT,                                                :
                                                             :
                              Plaintiff,                     :
                                                             :
           -v-                                               :
                                                             :
KEVIN CHEVERKO, COMMISSIONER                                 :
OF THE WESTCHESTER COUNTY                                    :
DEPARTMENT OF CORRECTIONS, et al.,                           :
                                                             :
                              Defendants.                    :
                                                             :
------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: October 9, 2015

12-cv-9196 (KBF)

MEMORANDUM OPINION
& ORDER

KATHERINE B. FORREST, District Judge:

Plaintiff Paul Rembert alleges that he was involved in an altercation with another inmate and suffered a fracture to his left arm. He claims that despite his seeking medical treatment following the incident and complaining of wrist pain, the fracture was not identified for several months. He further asserts that once the fracture was identified and surgery recommended, he did not receive that surgery in a timely fashion. This action followed. Defendants contend that plaintiff did not complain of pain in his arm immediately following the incident, and that all appropriate treatment was provided. On March 5, 2015, the law firm of Patterson Belknap Webb & Tyler agreed to represent plaintiff on a pro bono basis.

Before the Court is plaintiff's motion to compel of October 5, 2015. For the reasons set forth below, that motion is GRANTED in its entirety.

I.     THE DISPUTE REGARDING EMAIL

This particular discovery dispute traces its origins back to March 17, 2015. At that time, plaintiff's new counsel served document requests calling for "any internal communications regarding Paul Rembert" and "any communications with the Westchester County Department of Corrections regarding Paul Rembert." (See ECF No. 174.) Defendants failed to respond to that request until June 22, 2015, at which time they simply stated that they were not in possession of any such communications. (Id.) Plaintiff's counsel raised concerns regarding this simplistic response at a conference with the Court on June 24, 2015. (Id.) At that conference, when pressed, defendants' counsel conceded that defendants had not performed any search for emails and committed to expeditiously search for electronic documents for their witnesses. Plaintiff followed up on this commitment thereafter but received no response. (Id.)

Testimony of defendants' witnesses confirmed, however, that responsive documents had been created relating to Mr. Rembert and should exist. All five Correct Care witnesses, including its corporate designee, Alexis Gendell, its Medical Director, Raul Ulloa, and its Director of Nursing, Michael Kelly, confirmed that Correct Care employees used email to communicate about their patients. (See ECF No. 188, Exs. 10-14.) Nurse Kelly specifically testified that he had sent "emails" to Dr. Ulloa regarding his investigation into Mr. Rembert's grievance regarding his treatment. Indeed, Nurse Kelly testified that he had reviewed those emails in

2

preparation for his deposition—yet they had not yet been produced. (ECF No. 188, Ex. 10.)

The parties met and conferred regarding the email collection issue in early July. Another meet and confer was held in mid-July – still nothing happened. As of July 20, when plaintiff filed its first motion to compel on this issue, not a single email had yet been produced. On July 21, defense counsel responded to the motion by calling, inter alia, the allegations regarding email collection "reckless and, frankly, scurrilous." (ECF No. 175, at 1.) Counsel quoted from the depositions of witnesses in support of his position that "nothing by way of relevant or discoverable evidence has been lost, destroyed or withheld." (Id., at 5.) The Court received the submissions in their entirety and granted the motion to compel.

Notwithstanding his representation on July 21, it turned out there were ate least some emails. Just prior to a conference before this Court on July 29, counsel for defendants made a small production of several emails to plaintiff's counsel. (ECF No. 184, Tr. at 23.) During the conference, plaintiff's counsel stated that while he had only a few moments to review the documents, he was nonetheless able to tell that it appeared to be incomplete. Plaintiff's counsel referenced Nurse Kelly's testimony that he had sent emails specifically regarding his investigation of plaintiff's complaints. (Id. at 23-24.) The Court inquired as to whether counsel had explored the defendants' retention practices. (Id.) Counsel for defendants, Mr. Murtagh, represented that he had overseen a search of emails that were located on servers in Tennessee. (Id. at 25.)

The Court then outlined several possible ways of proceeding to resolve this email issue including a discussion of protocols used for the email collection, and/or an interview with an IT specialist for Correct Care Solutions, or a 30(b)(6) deposition.  The Court noted, "The chronology here could be very important because depending upon when these [emails] were sent, and [the] email retention [protocols], the[re could have been] roll off . . . It could be that emails don't exist because they're just gone in the ordinary course.  Or it could be that the IT person didn't search one [] server . . . " (Id. at 27.)   Mr. Murtagh stated, "I am happy to work with [plaintiff's counsel] on that" but reiterated that this all seemed to derive from "one statement that is alleged to Mr. Kelly" and that thus far his search had not revealed any emails relating to plaintiff.  (Id.)  The Court asked the parties to work together on the necessary discovery to determine if the lack of emails was a non-issue or whether there was a claim for spoliation. (Id. at 29, 34.)

The next time the email issue was raised with the Court was in defendants' August 24 motion to strike plaintiff's 30(b)(6) notice on the retention and production of emails. (ECF No. 186.)  Defendants argued "There is no basis for the deposition plaintiff seeks given that plaintiff cannot demonstrate that any documents demanded have been lost, misplaced or destroyed." (Id. at 1.)  Defense counsel argued that three out of five medical provider-witnesses had testified to having had no communication of any kind about plaintiff's treatment, one nurse testified to a single email asking why she was being deposed since she had not treated plaintiff, and the another nurse testified to having sent an email about the grievance plaintiff

4

had filed regarding his treatment (this was the Nurse Kelly testimony previously discussed).  (Id. at 2-3.)   Counsel again reiterated "all of the emails referencing plaintiff have been produced." (Id. at 3.) Counsel further stated that he had located Nurse Kelly's "grievance-related" email, it had been overlooked at it was an attachment and not in the body of the email. (Id.)  Counsel also stated that it was well aware of its obligation to advise its client on retention and had done so.

Plaintiff's opposition to this motion again referenced testimony of Nurse Kelly and other witnesses that email use regarding plaintiff was more extensive than defense counsel was indicating.  (ECF No. 188.)  Transcripts that had been attached to plaintiff's July 20 letter (ECF No. 174) and his August 26 letter (ECF 188), were again referenced in his October 5 letter (ECF No. 190).  Plaintiff's counsel also represented that they had attempted to proceed in the staged manner the Court had suggested in July – and had sought to interview an IT person as an initial step, but that defense counsel had failed to respond to such request.  (ECF No. 188.)

The Court has reviewed the excerpted transcripts and agrees that they indicate more email use than what appears to have been produced to date.[1]   It is unclear how much email use related to plaintiff Rembert other than a likely email for a referral to an outside orthopedist by a per diem nurse, and any back and forth between Nurse Kelly and Dr. Ulloa.  Dr. Ulloa testified that he uses email to discuss

---

[1] Alexis Gendell testified that that the medical staff do use email about patient care.  (ECF No. 188, Ex. 12, Gendell Tr. At 81.)  Nurse Kelly confirmed that this would occur from time to time. (ECF No. 188, Ex. 10, Kelly Tr. at 26.)

grievances with Nurse Kelly who prepares responses, but that he does not recall one way or the other an email with regard to Mr. Rembert. (ECF No. 188, Ex. 11, at 198.) We do know that Nurse Kelly sent such an email as it is attached as an exhibit – and shows that the addressees included jfg0@westchestergov.com, Raul Ulloa and Alexis Gendell; at the very least, these individuals should have a record of receipt. (ECF No. 188, Ex. 7.) Dr. Ulloa did not testify that he did not send or receive emails regarding plaintiff, only that he did not recall—which the Court reads as "one way or the other." (ECF No. 188, Ex. 11, Tr. 200:22-23.) Nurse Kelly testified that he had sent "emails" —in the plural—regarding plaintiff, not the single email. (ECF No. 188, Ex. 10, Kelly Tr. at 164.) This testimony is not particularly surprising testimony in light of the communication practices in most offices today.

      The Court denied the motion to strike. (ECF No. 189.) The Court stated,

> Plaintiff has followed the steps the Court outlined – and having failed to obtain satisfactory and clear information, a deposition is now appropriate. The emails in this case could be particularly relevant given the plaintiff's core allegations. If no further emails exist, and never existed, that is an important piece of information for both sides. **Defendants are cautioned to insure the 30(b)(6) witness is properly and fully prepared on each topic.** The topics are routine but require clear information by the deponent.

(Id.) (emphasis added). Thereafter, the 30(b)(6) deposition proceeded on September 25.[2] But it is clear from the transcript that the witness was not prepared to deal with even the most basic topics set forth in the notice. It was a pure waste of time.

---

[2] Plaintiff's counsel states that it did not occur before then because defendant would not produce a witness before that date.

The designated witness, Peter Gavin, the Director of Health Information, testified that he had met with defense counsel once, for "an hour, I think." (ECF No. 192, Ex. 1 Gavin Tr. at 9:15-17.)  This is in contrast to defense counsel's representation in his response to this motion that he prepared Mr. Gavin over the course of two days.  (ECF No. 193, at 2.)  Someone's recollection is incorrect.  Mr. Gavin did not know the version of the email platform used, whether Correct Care maintains the emails on its own server or works with a third party to do that, whether  the storage is cloud-based, whether there are any size constraints on the amount of email data that a user can retain, what deletion practices were employed automatically, periodically or specifically, he was unfamiliar with ways of archiving emails other than his own personal practice, whether emails and documents were stored on the hard drive of a user's computer or on a network server, whether emails sent or received through cell-phones would go through a web-mail client, whether Correct Care backs-up email, etc. (ECF No. 192, Ex. 1 Gavin Tr. at 16, 20-21, 22-24, 26-27.)  The list goes on and on.  The Court notes that defense counsel who was examining the witness was remarkably calm in the face of these answers and, instead of engaging in useless colloquy about how unprepared the witness was, proceeded to build a record.  This was admirable.  This motion followed.

Plaintiff now moves to compel a properly prepared 30(b)(6) witness to testify as to the same topics previously noticed, and to reimburse plaintiff's costs and fees associated with this additional deposition.  (ECF No. 190.)  This motion also separately seeks to compel defendants' written policies and procedures governing

the provision of medical and nursing care at the Westchester County Department of Corrections, and finally, for production of investigation documents relating to grievances made by other inmates against these defendants for failure to provide medical care.  (Id.)

Production of emails is a standard request in all civil cases.  Once a defendant believes that litigation is reasonably likely, a retention obligation attaches.  In some cases this only occurs once a case has been filed or served (depending on whether the defendant had notice of the action as of filing or only when served.)   The retention obligation here therefore attached not later than somewhere between December 17, 2012 and when the action was filed and June 11, 2013, when counsel for defendants filed a notice of appearance.  The Court has no idea whether an appropriate document retention hold was put in place, though it is aware of counsel's representation at the conference in July 2015 that it was.  The Court also has no idea as to whether once the hold was put in place, any emails that may have existed continued to exist, or were deleted.  Just how many emails, and the importance (or lack of importance) of any unproduced emails is also unknown.

But here we are in mid-October and we still are not at the bottom of all this.  This issue should long ago have been resolved.  Based on the materials before the Court on this and the other motions recited above, the fault is defendants'.  Defendants could have put this issue to rest—and indeed were ordered to do so—by producing an appropriately prepared 30(b)(6) witness.  Mr. Gavin was not appropriately prepared.  To be clear, a 30(b)(6) witness need not have personal

knowledge of a topic so long as he is prepared to speak to it. That Mr. Gavin was not the person who collected and searched for the emails is no excuse—counsel could have prepared him. (Gavin Tr. at 29:2-21.) If he was not the right witness, counsel had an obligation to so notify plaintiff's counsel and to find another witness to prepare. It seems that there is an avoidance of doing that which defendants are required to do—and this troubles the Court. If the reason is that defendants do not take this issue seriously, then defendants should understand that that is a view not shared by this Court. To the extent that there has been no spoliation, so much the better—but defendants should realize that the fact that this Court has now had to address this issue yet again, and issue an order yet again, means that the Court's concern as to spoliation is higher than it used to be, not lower.

    A properly prepared 30(b)(6) witness shall be made available not later than **October 23, 2015**. Counsel shall confer on the appropriate location to take the deposition. As plaintiff should not have to have made this motion given the Court's prior rulings and warnings, defendants shall pay the costs plaintiff has incurred in bringing this motion including: reasonable attorney's fees for attending the useless deposition of Mr. Gavin and bringing this motion, and court reporter fees for the deposition of Mr. Gavin. Such costs shall be paid to the Patterson Belknap firm within **30 days** of this Order. Defendant shall also provide plaintiff <u>and the Court</u> with copies of any document retention / preservation notices issued in connection with this case and the recipients of such hold notice. Such production shall occur not later than **October 16, 2015.**

II.     THE OTHER REQUESTS

Westchester County Correction's policies and procedures regarding the provision of medical care are a central issue in this case. There is a protective order in this case that prevents use of such material for any purpose other than this litigation. Counsel for plaintiff are experienced litigators from a firm with the ability to comply fully with that order. Defendants have agreed to produce only a table of contents of the manual at issue. That is insufficient—and requires plaintiff's counsel to shoot in the dark. It is not at all clear that the table of contents would indicate the portion or portions of the manual applicable to plaintiff's claims. The entire manual shall be produced in unredacted form, attorneys' eyes only, within **one week** of this order.

In addition, there are apparently diagnostic prompts known as "nursing pathways." Plaintiff seeks production of these. (ECF No. 190, at 3.) The Court agrees that they may be relevant and that they should be provided. It may be that the easiest way to provide them is to for plaintiff's counsel to provide defendants with a hard drive onto which they can load the program with the "pathways."

The Court understands defendants' argument that the pathways were not in use at the time of the events here at issue. But that timeframe issue does not mean they are not relevant under Rule 26 of the Federal Rules of Civil Procedure.

Finally, plaintiff seeks the investigatory work associated with other grievances against defendants for failure to provide medical care. The Court also finds that these are relevant under Rule 26 and should be produced – though they

may be produced with the patient name and other purely patient-identifying information redacted.  No other information should be redacted without further order from this Court.  Such production shall be made not later than **October 23, 2015**.

    SO ORDERED.

Dated:    New York, New York
           October 9, 2015

                                        _____
                                          KATHERINE B. FORREST
                                          United States District Judge