GAINES, NOVICK, PONZINI, COSSU, & VENDITTI, LLP
ATTORNEYS AT LAW
11 Martine Avenue, 8TH Floor
WHITE PLAINS, NEW YORK 10606
(914) 288-9595
FAX (914) 288-0850
*Service Not Accepted by Fax*

December 21, 2015

Hon. Katherine B. Forrest
United States District Court
500 Pearl Street
New York, NY 10007-1312

### Rembert v Cheverko, No.: 12-cv-9196 (KBF)

Your Honor:

      As you are aware, this office represents the defendants in this matter.

      We are in receipt of plaintiff's counsel's December 18, 2015 letter to the court advising that plaintiff intends to discontinue all remaining claims.

      We, of course, welcome plaintiff's agreement to discontinue given the complete absence of evidentiary support for any of his claims. However, under the circumstances of this case, and, particularly, the timing of plaintiff's counsel's action, we believe that the costs of defendants' recently filed summary judgment motion should be borne by plaintiff and his counsel.

      On November 16, 2015, following the close of discovery we wrote to plaintiff's counsel pursuant to F.R.C.P. 11 requesting that they discontinue all claims given the lack of evidence to support any of plaintiff's allegations. A copy of that letter, which details the lack of evidentiary support for each and every cause of action in detail, is enclosed herewith.

      In response, plaintiff's counsel discontinued two claims but refused to discontinue the deliberate indifference claim against defendant Kelly, the Monell claim against Correct Care Solutions, LLC ("CCS") and the medical malpractice claims against CCS. This despite the fact that counsel was unable to refute any of the arguments made in the November 16 letter nor could counsel, when requested, verbalize any legal or factual basis for continuing to pursue these claims.

      As a result, defendants were compelled to prepare a lengthy motion for summary judgment which was filed on December 4, 2015. (Dkt. Nos. 216-219) Even then, plaintiff's counsel's initial response was not to discontinue but to demand that defendants redact and seal its motion, to which we consented, but which resulted in significant additional work by our paralegals. (Dkt. Nos. 220-225).

Plaintiff now wishes to simply discontinue his remaining claims with no cost or consequence. Yet, defendants specifically offered plaintiff an opportunity to so do before filing their motion and plaintiff and his counsel refused. Now, having put defendants to the time and expense of an unnecessary summary judgment motion and despite the fact that nothing in defendants' motion had not previously been raised in our November 16 letter nor had any new facts or evidence come to light in the intervening two and one half weeks to change any analysis of the facts or law, plaintiff wishes to walk away with no consequence.

While we welcome plaintiff's discontinuance of his remaining claims, we believe that those claims should have been dismissed sooner, certainly, upon receipt of our November 16 letter. There was simply no reasonable basis for continuing this litigation and putting defendants to the time and expense of filing and then refiling their summary judgment motion.

We request, therefore, an order dismissing the remaining claims with prejudice but with an award of costs and attorney's fees on the motion for summary judgment.

Respectfully,

John M. Murtagh

JMM/ws

cc: Patterson, Belknap, Webb & Tyler LLP

**GAINES, NOVICK, PONZINI, COSSU & VENDITTI, LLP**
ATTORNEYS AT LAW
11 MARTINE AVENUE, 8th Floor
WHITE PLAINS, NEW YORK 10606
(914) 288-9595
FAX (914) 288-0850
*Service Not Accepted by Fax*

John M. Murtagh, Esq.
E-mail: jmurtagh@gainesllp.com
Office: (914) 288-9595

November 16, 3015

**VIA E-MAIL AND REGULAR MAIL**

Jonathan Hatch, Esq.
Patterson, Belknap, Webb & Tyler, LLP
1133 Avenue of the Americas
New York, NY 10036-6710

<u>**REMBERT v. CHEVERKO, et al, 12-cv-9196 (KBF)**</u>

Dear Mr. Hatch:

As you know, this firm represents the defendants in this matter.

We are writing pursuant to Federal Rule of Civil Procedure 11 to provide you with an opportunity to withdraw plaintiff's Third Amended Complaint ("TAC"), which we deem to be a frivolous pleading filed by your firm on behalf of plaintiff.

The TAC is signed by Adeel A. Mangi of your firm and the CPLR 3012-a Certification by you. However, there is no evidence that upon acceptance of this assignment from the Court, either of you made any reasonable inquiry that the claims are warranted or that the factual contentions have any evidentiary support. Instead, there is every indication that Mr. Mangi and you did just the opposite, parroting plaintiff's unsupported boilerplate allegations and then embarking on a costly and wasteful fishing expedition in the hope of uncovering evidentiary support for plaintiff's specious claims.

*First*, the signing attorneys cannot discharge their duty to investigate the facts underlying the complaint by relying solely upon the inquiry conducted by others. *In Re Frontier Insurance*, 172 F.R.D. 31, 1997 U.S. Dist. LEXIS 5613 (E.D.N.Y. 1997). In addition, while an attorney may rely on a client's statements when they are "objectively reasonable", *Calloway v. Marvel Entertainment*, 854 F.2d 1452, 1479 (2d Cir. 1988), "blind reliance on the client is seldom a sufficient inquiry into the factual basis of a complaint." *Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986). Furthermore, when a lawyer learns that an asserted position, even if originally supported by adequate inquiry, is no longer justifiable, he must not

persist in its prosecution. *Id.* at 788. Indeed, "[i]f Rule 11 is to mean anything, and we think it does, it must mean an end to such expeditionary pleading. This shotgun approach to pleadings...where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick, is to be discouraged." *Id.* [internal citations omitted].

*Second*, plaintiff was never forthcoming about his medical history and the entirety of the TAC is based upon purposeful omissions and misrepresentations which were never adequately investigated. The TAC is factually premised upon plaintiff's claim that he fractured his left wrist on February 28, 2012 and that defendants failed to properly examine him, failed to heed his complaints about his left wrist that day, and for months failed to diagnose his injury until September 2012. However, as we learned during the non-party deposition of Richard Magill, M.D. taken on November 11, 2015, the medical records show that the injury to Plaintiff's left wrist occurred as early as 2002, when he was treated at the Westchester Medical Center for "a chronic scaphoid lunate ligament injury and a radial styloid fracture" of his left wrist. As you are aware, there was also an earlier indication in this litigation that plaintiff's claims were suspect in the medical records of the NYS Department of Corrections from 2008, which show a complaint of a left wrist injury in 2008.

If the plaintiff does not withdraw the TAC and dismiss all remaining claims against the defendants within the time provided by the Rule, defendants will move for summary judgment and, once successful, seek attorney's fees and costs from the plaintiff and your firm as counsel. As will be made clear in the motion we intend to shortly file, the three causes of action set forth in the TAC are frivolous on the additional following grounds:

### A. The First Cause Of Action: Deliberate Indifference To Plaintiff's Medical Needs Under 42 U.S.C. § 1983 (Against Kelly)

To succeed on a §1983 claim for deprivation of medical care, a plaintiff must allege and establish that a defendant undertook "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); see also, *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000). Deliberate indifference includes both a subjective and an objective component. *Hill v. Curcione*, 657 F 3d. 116, 122 (2d Cir. 2011).

To fulfill the subjective component, an official charged with deliberate indifference must act with a sufficiently culpable state of mind and must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and he must draw that inference. See, *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

To fulfill the objective component, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration or extreme pain exists. *Hathaway v. Coughlin*, 99 F. 3d 550, 553 (2d Cir. 1996).

Plaintiff's single specific allegation against Michael Kelly, R.N. is that he ordered one session of physical therapy for plaintiff "instead of providing appropriate medical care." (TAC at ¶¶ 3 and 57). The TAC then states, without any factual specification, that Kelly denied Rembert surgical treatment for his wrist to avoid the cost of surgery until plaintiff had been transferred to state custody. (TAC at ¶¶ 4 and 63).

Based upon this conclusory pleading, the TAC then asserts that Kelly was deliberately indifferent to the plaintiff's serious medical needs.

However, a thorough review of the medical records reveals that there is no evidence at all that Kelly ever ordered physical therapy for the plaintiff or ever denied or delayed medical care for him. In fact, the records demonstrate that Kelly never provided any medical care to the plaintiff or saw or treated the plaintiff in connection with his alleged injury.

Plaintiff's deposition testimony also confirms that Kelly never provided him with medical care and that he never had any interaction with Kelly regarding medical treatment at all. And Kelly specifically testified that he never treated plaintiff and would not have had responsibility for doing so (deposition of Michael Kelly, July 7, 2015, pp. 121: 1-16 to 122: 1-13).

We discussed the dearth of evidence to support any of the plaintiff's claims against Kelly during a telephone conversation on Friday November 6, 2015. You acknowledged the lack of evidentiary support for the allegations as pled, but stated that because Kelly provided a written response to plaintiff's December 17, 2012 grievance, it could be argued that he should have taken steps to see that plaintiff received care at that point. However, that is not alleged in the TAC, and plaintiff cannot simply amend the pleading for a fourth time by means of an extemporaneous comment during a Friday evening phone call.

In any event, even indulging that newly-hatched allegation, it does not support the claim of deliberate indifference to serious medical needs against Kelly. Plaintiff submitted that single grievance claiming a delay in treatment, specifically surgery, on December 17, 2012. Kelly drafted and filed a response that same day and, as the records show, by that date the request for surgery had already been made. Thus, there is absolutely no factual basis for the claim that Kelly delayed or denied the plaintiff treatment by means of his response to the December 17, 2012 grievance.

In the absence of any evidence that the plaintiff was seen and treated by Kelly or that Kelly failed or neglected to provide treatment to plaintiff in any respect, there is simply no basis upon which plaintiff's First Cause of Action may be sustained and it should immediately be withdrawn.

### B. Second Cause Of Action: Deliberate Indifference To Plaintiff's Medical Needs Under 42 U.S.C. § 1983 (Against CCS)

Plaintiff's Second Cause of Action appears to be an attempt to make out a so-called *Monell* claim for municipal liability against Correct Care Solutions, LLC. ("CCS"). This claim also fails and should be withdrawn

To establish a claim of municipal liability, plaintiff must prove (1) an official policy or custom, (2) which causes plaintiff to (3) be subject to the denial of a constitutional right. *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007); see, *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). There is no evidence to establish any one of these elements let alone all three.

*First,* there is no evidence that CCS employed or imposed an official policy or custom of deliberate indifference to plaintiff's serious medical needs. In fact, the documentary evidence unequivocally demonstrates that CCS did not have a contractual relationship with the County of Westchester to provide medical services at the County Jail in 2012 and did not provide such services or employ those who did.

In addition, while we note that plaintiff identifies "New York Correct Care Solutions Medical Services, P.C." ("NYCCS") as a party defendant (TAC at ¶11), there are no substantive factual statements or legal claims alleged against NYCCS. Both of the named defendants, Kelly and King Bogle, and all of the unnamed "medical staff" are referred to as CCS employees and personnel. Similarly, although the pleading alleges that Kelly was a "policy maker" at CCS, he was not employed by CCS, but by NYCCS, a separately incorporated entity. (Deposition of Michael Kelly, July 7, 2015 at p. 10, l. 7-17). To the extent that NYCCS is alleged to be a "wholly owned subsidiary" of CCS (TAC at ¶11), such allegation is made "upon information and belief" and plaintiff has developed no evidence to support that claim or to impute the acts of NYCCS and its employees to CCS. Therefore, since plaintiff actually alleges no cause of action against NYCCS, to the extent it is a party, it should be dismissed from this action immediately.

*Second,* there is simply no evidence to support the claim that Kelly or anyone else on behalf of CCS created or applied a policy or custom to deprive plaintiff of any constitutional right. Nor is there any evidence that Kelly, was a "policy maker" at all in the case of the care of Paul Rembert and plaintiff's rummaging through confidential medical records and grievances filed by other inmates has failed to uncover any such policy or custom.

Accordingly, plaintiff cannot establish the elements of a *Monell* claim (or any other claim) against CCS. We demand, therefore, that this cause of action also be withdrawn.

### C. Third Cause Of Action: Medical Malpractice (Against Kelly, King-Bogle And CCS)

Under New York Law, the requisite elements of proof in a medical malpractice case are (1) a deviation or departure from accepted practice and (2) evidence that such a departure was a proximate cause of injury or damage. *Milano v. Freed*, 64 F.3d 91 (2d Cir. 1995).

Plaintiff's Third Cause of Action alleging medical malpractice against Kelly, Marcella King-Bogle, L.P.N. and CCS is pled with no specificity making it impossible to determine what acts or omissions it is alleged constitute medical malpractice by any one or all three of the named defendants.

As discussed above, there is no evidence that Kelly ever treated plaintiff or that he neglected to do so when so obligated. Therefore plaintiff cannot establish a deviation from accepted practice, nor that Kelly's purported deviation in accepted practice proximately caused plaintiff's alleged injury. What the evidence has shown is that plaintiff's alleged injury occurred at least 10 years.

The only specific factual allegation against King-Bogle is that she was present in the medical clinic on February 28, 2012, after plaintiff's altercation, and that she heard him tell "the medical staff" "where he had been punched, including in his head and eye", "where he had been bitten and received lacerations", "where he felt pain, including the back of his head, his left wrist and his shoulder, "that his wrist was painful and swollen," and that "the skin on his wrist was abraded." (TAC at ¶¶ 36, 37 and 38).

However, King-Bogle's purported presence in a room to overhear certain statements does not state a cause of action for medical malpractice. In addition, physical evidence in the form of audio and videotape of that clinic visit, shows that plaintiff did not make those statements and that King-Bogle was not even present at the time. Similarly, there is no documentary nor testamentary evidence that King-Bogle ever medically treated the plaintiff. The medical chart demonstrates that her limited role ministerial and her testimony was that her sole responsibility was to physically pick up medication orders written by others "stamp it, place it in a box" and "then they send it to administration records to be scanned" (Deposition of Marcella King-Bogle, July 9, 2015 at p. 19, l. 3-7). King-Bogle did not even administer medication to plaintiff, she merely, processed paper-work,

Medical malpractice cases also require expert testimony regarding the standard of care in the community and expert medical testimony is required to establish proximate cause and to make out a prima facie case of medical malpractice. *Gibson v. D'Amico*, 97 A.D.2d 905, 906-907, 470 N.Y.S.2d 739, 742 (3d Dept. 1983), appeal denied, 61 N.Y.2d 604, 472 N.Y.S.2d 1027, 460 N.E.2d 1107 (1984); *Monahan v. Weichert*, 82 A.D.2d 102, 107, 442 N.Y.S.2d 295, 298 (4th Dept. 1981).

Here, plaintiff has proffered absolutely no expert testimony or evidence of any sort to support his malpractice claims against King-Bogle or Kelly. Indeed, at no time did plaintiff's designated expert Robert Leupold, M.D. testify that the care rendered to the plaintiff was a deviation or departure from the standard of care. Neither his written report nor in his testimony even mentions any care rendered by Kelly or King-Bogle, nor does it state that either departed from the standard of care in rendering treatment to plaintiff. To the contrary, Dr. Leupold testified that the care as documented in the record was appropriate and, only when asked to assume hypothetical facts unsupported by the evidence, did he even suggest that there may have been a departure.[1]

As to CCS, absent any evidence of medical malpractice by any individual defendant and given that CCS did not employ either Kelly or King-Bogle or the unnamed medical personnel, and given that CCS was not even a party to the contract with the County, plaintiff has not and cannot establish any liability of CCS either directly or on a theory of respondeat superior.

In sum, plaintiff has absolutely no basis either in fact or law for any of his three causes of action against the defendants and would be well advised to discontinue this matter forthwith. We note that even you acknowledged during our November 6, 2015 telephone conversation that for these reasons you were "looking at" the claims against King-Bogle. You should "look at" all claims and withdraw the complaint. Defendants intend to aggressively pursue summary judgment in light of the complete absence of any proof to support plaintiff's baseless allegations and will, if forced to do so, seek attorney's fees and costs against both plaintiff and his counsel.

Please be guided accordingly.

Very truly yours,



John M. Murtagh

cc: Adeel Mangi, Esq.
Joseph Ritchie, Esq.
Alejandro Cruz, Esq.

---

[1] Dr. Leupold even confirmed that to the limited extent that King-Bogle physically moved pieces of paper regarding medication, the provision of medication was within the standard of care. (Deposition of Robert Leupold, October 27, 2015 at p. 56, l. 9-11; p. 66, l. 15-17).